UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ADMINISTRATIVE COMMITTEE OF THE WAL-MART STORES, INC. ASSOCIATES' HEALTH AND WELFARE PLAN, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:05 CV 00129 LMB |
| JAMES A. SHANK, as Trustee of the DEBORAH J. SHANK IRREVOCABLE TRUST, DEBORAH J. SHANK and the DEBORAH J. SHANK IRREVOCABLE TRUST, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on the Complaint of Plaintiff Administrative Committee of The Wal-Mart Stores, Inc. Associates' Health and Welfare Plan for equitable relief and damages pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3). This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c).

Currently pending before the court is Plaintiff's Motion for Summary Judgment (Document Number 10), along with a Statement of Uncontroverted Material Facts (Doc. No. 10), Memorandum in Support (Doc. No. 11), and Index of Evidence (Doc. No. 12). Defendants have filed a Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 21),

and plaintiff has filed a Reply (Doc. No. 25).

## Background

On August 8, 2005, plaintiff filed its Complaint for equitable relief and damages under ERISA and federal common law for recovery of sums paid by the Wal-Mart Stores, Inc. Associates Health and Welfare Plan ("Plan") for medical services received by Defendant Deborah J. Shank. (Doc. No. 1). Plaintiff, the Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan ("Administrative Committee") is the "named fiduciary" of the Plan, which is an employee welfare benefit plan within the meaning of ERISA. Plaintiff is pursuing this action on behalf of the Plan.

The facts in this matter are undisputed. Defendant Deborah J. Shank incurred significant medical expenses after sustaining injuries in an automobile accident on May 12, 2000. Ms. Shank submitted a claim to the Plan, which paid the medical bills in an amount exceeding $469,216.00. Ms. Shank sued the parties responsible for causing her injuries and settled her claims for $700,000 on August 8, 2002. After payment of attorney fees and costs, Ms. Shank received $417,477.00, which was placed in a special needs trust ("Trust") created for the benefit of Ms. Shank, with Ms. Shank's husband, James A. Shank to serve as Trustee.

Plaintiff alleges that, pursuant to the terms of the Plan, the Plan has the right to be reimbursed from the proceeds of any settlement Ms. Shank received for the injuries she incurred and for which the Plan paid the benefits. Plaintiff states that the Plan advised Ms. Shank and her attorneys that they must inform the Plan before she settled her suit, but Ms. Shank did not notify the Plan of the settlement until after October 9, 2002, well after the settlement had been completed and the proceeds had been placed in the Trust. Plaintiff claims that defendants' failure

to reimburse the Plan the full amount of the settlement is a violation of the terms of the Plan. Plaintiff requests that the court grant a declaratory judgment in its favor, injunctive relief, specific performance, impose a constructive trust, and grant it restitution from and against James A. Shank as Trustee and the Deborah J. Shank Irrevocable Trust ordering James A. Shank as Trustee to turn over to the Plan the settlement proceeds in the amount of at least $469,216.00 for the medical bills paid on Ms. Shank's behalf. In addition, the plaintiff seeks attorney's fees, interest, and costs. Plaintiff also alleges that defendants breached their fiduciary duty to the Plan to use the assets only for the benefit of the Plan and its beneficiaries, and not for their own use. Plaintiff thus requests that the court award it damages for the amount of the medical bills paid on Ms. Shank's behalf and not reimbursed to the Plan, in addition to attorney fees, interest, and costs.

Plaintiff filed a Motion for Preliminary Injunction, which the court granted on June 9, 2006. (Docs. No. 14, 29). The preliminary injunction enjoined defendants from dispersing the remaining settlement proceeds held in the Trust, except as specifically listed in the injunction.

## Discussion

**A.     Summary Judgment Standard**

A court may grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56 (c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252, 106 S. Ct. at 2512. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to

the nonmoving party.  See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the non-movant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue.  See Anderson, 477 U.S. at 249, 106 S. Ct. at 2510-2511.  The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Id. at 327, 106 S. Ct. at 2555  (quoting Fed. R. Civ. P. 1).

**B.      Plaintiff's Motion For Summary Judgment**

Plaintiff argues that judgment should be entered in its favor because no genuine issue of material fact exists as to the Plan's right to reimbursement and subrogation.  Specifically, plaintiff claims that the plain language of the Plan entitles it to first priority in Ms. Shank's settlement proceeds and defendants have failed to comply with the terms of the Plan document.  Plaintiff contends that it is entitled to equitable relief, including a constructive trust, to enforce its reimbursement interest in the settlement proceeds.  Plaintiff further argues that it is entitled to damages, in the amount of Ms. Shank's medical bills the Plan paid for injuries sustained in the accident, for defendants' breach of their fiduciary duties.

In their Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, defendants first argue that this court lacks jurisdiction under ERISA. Defendants next claim that plaintiff has not produced sufficient evidence to establish as a matter of law that its claim for reimbursement is based upon a reasonable interpretation of the Plan's terms. Specifically, defendants contend that there is no evidence that the Summary Plan Description, upon which plaintiff relies in its claim for reimbursement, is a valid part of the Plan. Defendants argue that, even if there were sufficient evidence to establish that plaintiff's claim for reimbursement is in accordance with the Plan's terms, plaintiff's claim is not for "appropriate equitable relief," it is not "appropriate," and it does not serve public policy or the purpose of ERISA. Defendants further argue that they did not breach any fiduciary duty owed to plaintiff. Finally, defendants contend that equitable reimbursement should allow repayment of the Plan only after Ms. Shank has been made whole.

Plaintiff, in its Reply, responds to defendants' various arguments. Plaintiff contends that defendants have failed to establish the presence of a material issue of fact. The undersigned agrees. For the reasons set forth below, plaintiff's Motion for Summary Judgment will be granted.

### 1. Subject Matter Jurisdiction

Defendants first argue that this court lacks subject matter jurisdiction over this suit because plaintiff is seeking monetary damages under a breach of contract theory, and not "appropriate equitable relief" under ERISA. § 502(a)(3), 29 U.S.C. § 1132(a)(3).

ERISA authorizes a civil action "by a...fiduciary (A) to enjoin any act or practice which violates...the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress

such violation or (ii) to enforce any provisions of...the terms of the plan." 29 U.S.C. § 1132(a)(3). The Eighth Circuit has held that a fiduciary's claim against a plan participant for specific performance of the plan's subrogation and reimbursement clause falls within the exclusive jurisdiction of ERISA. See Lyons v. Philip Morris, Inc., 225 F.3d 909, 913 (8th Cir. 2000).

The United States Supreme Court distinguished between legal and equitable restitution in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). In Great-West, an ERISA plan brought an action for specific performance of a reimbursement provision and to compel a plan beneficiary who had recovered from a third party to make restitution to the plan for benefits that it had paid. The Supreme Court held that Section 502(a)(3) did not authorize the suit against the beneficiary for reimbursement where the settlement funds had already been distributed to a special needs trust for the beneficiary's care, to the beneficiary's attorney, and to various lien holders. Id. at 214, 122 S.Ct. 708. The Court found that the action could not be characterized as equitable relief because it sought to impose personal liability on the beneficiary for benefits it had conferred upon her, which was a legal remedy. Id. at 214, 122 S.Ct. 708. The Court, however, acknowledged that a plaintiff could seek restitution in equity, "ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." Id. at 213, 122 S.Ct. 714. In a recent case, Sereboff v. Mid Atlantic Medical Services, Inc., 126 S.Ct. 1869 (2006), the Supreme Court, applying Great-West, held that an ERISA plan's action to recover amounts paid for medical expenses from a plan beneficiary was a proper action for equitable relief under ERISA where the plan sought recovery through a constructive trust on a specifically identifiable fund.

Here, plaintiff claims that it is entitled to a portion of the settlement proceeds pursuant to the terms of the Plan. Unlike the plaintiff in Great-West, the Administrative Committee has sued the trustee of the special needs trust, the individual who has possession of the funds. In addition, plaintiff seeks equitable restitution, including the imposition of a constructive trust, to restore to plaintiff particular funds in the defendants' possession, rather than the imposition of personal liability upon the trustee of the special needs trust as was sought in Great-West. As such, this court has exclusive jurisdiction over plaintiff's action under ERISA.

Although in the present case the proceeds awarded as a result of the personal injury suit were placed in a special needs trust, this was done after the equitable lien of the Plan had been asserted and acknowledged. See Ex. 10, Letter of June 27, 2001 addressed to Gray, Ritter and Graham with the acknowledgment "The above is agreeable. Date 7-2-2001. Signed: Maurice B. Graham." That lien and plaintiff's right of equitable restitution should not be defeated by the defendant's placing the funds into a special needs trust. As the Supreme Court stated in Sereboff:

> And as Barnes itself makes clear, other cases of this Court-not involving attorneys' contingency fees-apply the same "familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing."

126 S.Ct. at 1877 (quoting Barnes v. Alexander, 232 U.S. 117, 121, 34 S.Ct. 276, 278, 58 L.Ed. 530 (1914)).

### 2. Plaintiff's Right to Reimbursement and Subrogation

Plaintiff claims that the plain language of the Plan entitles it to first priority in Ms. Shank's settlement proceeds and defendants have failed to comply with the terms of the Plan. Defendants contend that inconsistencies exist between the Summary Plan Descriptions provided to Wal-Mart

employees and the actual wording of the Plan.

It is settled that ERISA plan participants have an obligation to reimburse the plan when a recovery is made from a third party responsible for the injuries and the plan terms require reimbursement. See Waller v. Hormel Foods Corp., 120 F.3d 138, 140 (8th Cir. 1997). A subrogation provision affects the level of benefits conferred by the plan, and ERISA leaves that issue to the private parties creating the plan. Id. As such, plaintiff's claim turns on the proper interpretation of the Plan.

Plaintiff relies on the "Right to Reduction, Reimbursement and Subrogation" provision contained in the January 2000 Summary Plan Description (SPD). This provision provides in relevant part as follows:

> [t]he Plan has the right to 1) reduce or deny benefits otherwise payable by the Plan and 2) recover or subrogate 100 percent of the benefits paid or to be paid by the Plan on your behalf and or your dependents to the extent of any and all of the following payments:
> • Any judgment, settlement or any payment made or to be made, relating to the accident, including but not limited to other insurance.

SPD at 19. The SPD further states that "[t]he Plan has first priority with respect to its right to reduction, reimbursement and subrogation." Id. at 20. In addition, the SPD provides that "[a]ll attorney's fees and court costs are the responsibility of the participant, not the Plan." Id. at 19.

Defendants do not dispute that the plain language of the SPD provides for the right of reimbursement and subrogation. Rather, at issue is whether the SPD is properly part of the Plan so that its reimbursement provision is enforceable against defendants. Defendants argue that the Plan consists only of the 1997 Associates' Health and Welfare Plan Wrap Document ("Wrap document"), which contains no such reimbursement provision.

The Eighth Circuit has held that summary plan descriptions are considered part of ERISA

plan documents. See Barker v. Ceridian Corp., 122 F.3d 628, 633 (8th Cir. 1997) (citing Jenson v. SIPCO, Inc., 38 F.3d 945, 949 (8th Cir. 1994)). Defendants rely on two Arkansas district court cases, Administrative Committee of Wal-Mart Stores Inc. Associates' Health & Welfare Plan v. Gamboa, 2006 WL 374764 (W.D. Ark. Feb. 7, 2006), and Cossey v. Associates' Health & Welfare Plan, 363 F. Supp.2d 1115 (E.D. Ark. 2005), which held that a similar reimbursement provision was not enforceable against participants because it appeared only in the SPD and was not part of the Plan. Gamboa and Cossey, however, can be distinguished from the instant case. In both of these cases, the Arkansas district courts interpreted the 2001 Wrap document. The courts determined that, under the language of the 2001 Wrap document, summary plan descriptions were not included in the definition of the Plan. See Gamboa, 2006 WL 374764 at *4; Cossey, 363 F. Supp.2d at 1131. In the instant case, the 1997 Wrap document applies, because this is the document that was in effect at the time plaintiff was injured in 2000. Defendants do not dispute that the 1997 Wrap document applies in this case. Unlike the 2001 Wrap document interpreted in Gamboa and Cossey, the 1997 Wrap document defines the Plan to include summary plan descriptions.

The 1997 Wrap document defines "Plan" as follows: "'Plan' means the Associates Health and Welfare Plan, which consists of this document and each Welfare Program incorporated hereunder by reference, as amended from time to time." Def's Ex. 5 at 2. "Welfare Program" is defined, in relevant part, as "a written arrangement, *including a summary plan description*, incorporated into this Plan that is offered by the Company which provides any employee benefit that would be treated as an 'employee welfare benefit plan' under Section 3(1) of ERISA if offered separately." Id. (emphasis added). The 1997 Wrap document further states that each

Welfare Program is identified in Appendix A of the Wrap document. See id. Appendix A lists the "Wal-Mart Associates' Group Health Plan" as a Welfare Program "comprising the Plan." Id. at App. A. The 1997 Wrap document provides that "[n]otwithstanding the number and types of benefits incorporated hereunder, the Plan is, and shall be treated as, a single welfare benefit plan..." Def's Ex. 5 at 1. The 2000 SPD, in turn, states that it is a Plan Summary for the Associates Health and Welfare Plan. See Def's Ex. 4 at S3. Plaintiff has also attached the Affidavit of Christy Herbaugh, Reimbursement Coordinator for the Plan, who states that the 2000 SPD is incorporated into the 1997 Wrap document. See Def's Ex. 3 at ¶ 5.

The undersigned finds that the 2000 SPD, which contains the reimbursement provision, is part of the Plan and is thus enforceable against defendants. This provision unambiguously gives the Plan first priority with respect to its right to reimbursement and subrogation from the proceeds of a settlement received for injuries incurred for which the Plan paid benefits. The Plan also requires that the beneficiary pay attorney's fees and costs incurred in achieving the settlement. As such, defendants were required to reimburse the Plan in the amount of the proceeds in the trust remaining from the settlement not to exceed $469,216.00, the undisputed amount the Plan paid in Ms. Shank's medical bills that were incurred as a result of the accident.

Plaintiff has demonstrated that no genuine issues of material facts exist and plaintiff is entitled to judgment on the merits. The court finds that plaintiff's request for a constructive trust is appropriate equitable relief under the circumstances. Thus, the court will impose a constructive trust on the settlement proceeds currently held in the Deborah J. Shank Irrevocable Trust not to exceed $469,216.00. The court declines to award attorney's fees or interest to plaintiff. See Givens v. Wal-Mart Stores, Inc. and Associates' Health and Welfare Plan, 327 F. Supp.2d 1063,

1067 (D. Neb. 2004).

In its Motion for Summary Judgment, besides seeking the imposition of a constructive trust and an order that James A. Shank as Trustee turn over the settlement proceeds in the trust, plaintiff asks for damages for the Shanks' breach of fiduciary duty. This relief is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Administrative Committee of The Wal-Mart Stores, Inc. Associates' Health and Welfare Plan's Motion for Summary Judgment (Doc. No. 10), be and it is **granted**. A separate order of Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that the court imposes a constructive trust on the settlement proceeds currently held in the Deborah J. Shank Irrevocable Trust not to exceed $469,216.00.

**IT IS FURTHER ORDERED** that James A. Shank, Trustee of the Deborah J. Shank Irrevocable Trust, is directed to deliver the settlement proceeds currently held in the Deborah J. Shank Irrevocable Trust not to exceed $469,216.00 to Baird Holm LLP on behalf of the Administrative Committee of the Wal-Mart Stores Inc.'s Associates' Health and Welfare Plan.

Dated this   31st   day of August, 2006.

                                                                        LEWIS M. BLANTON
                                                                        UNITED STATES MAGISTRATE JUDGE